## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., NeXT SOFTWARE, INC., f/k/a NeXT COMPUTER, INC.. | |
| Plaintiffs, | |
| v. | C.A. No. 10- 00166-RK |
| HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., EXEDEA, INC., | |
| Defendants. | |

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | |
| v. | C.A. No. 10-00167-RK |
| HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., EXEDEA, INC., | |
| Defendants. | |

## OPENING BRIEF OF DEFENDANTS HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC AMERICA, INC. AND EXEDEA, INC. IN SUPPORT OF MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

*Of Counsel:*

Robert A. Van Nest
Ashok Ramani
Leo L. Lam
Eugene M. Paige
Jennifer A. Huber
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
(415) 391-5400

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Stephen M. Ferguson (#5167)
Ferguson@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC America, Inc. and Exedea, Inc.*

Dated: April 9, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.     SUMMARY OF ARGUMENT ........................................................................ 2

III.    STATEMENT OF FACTS ............................................................................... 3

        A.      Apple developed the alleged inventions of the Northern District of
                California and is targeting a mobile operating system that Google
                designed there ..................................................................................... 3

        B.      The Northern District of California is Plaintiffs' home district ................. 4

        C.      All relevant witnesses and documents from third-party Google,
                whole Android OS is central to this case, are found in the Northern
                District of California ............................................................................. 4

        D.      HTC has an office in the Northern District of California, which is
                also closer to HTC's operation centers in Taiwan, ROC and Bellevue,
                Washington ........................................................................................... 5

        E.      Other important third parties are found closer to the Northern
                District of California .............................................................................. 6

        F.      Neither the parties nor evidence is located in the District of Delaware ....... 7

IV.     ARGUMENT .................................................................................................. 7

        A.      Apple could have brought this action in the Northern District of
                California ............................................................................................... 9

        B.      The private-interest factors weigh heavily in favor of transfer to the
                Northern District of California ............................................................... 9

                1.      Apple's choice of a Delaware forum deserves little, if any, deference ........... 9

                2.      The Northern District of California is a far more convenient forum
                        for the witnesses, especially third-party witnesses ......................... 10

                3.      The Northern District of California would be a far more convenient
                        forum for both parties ................................................................. 12

                4.      Apple's claims arose in the Northern District of California ........................... 13

RLF1 3558650v.1

C.      The Public Interest Factors Also Weigh in Favor of Transfer to the
        Northern District of California............................................................................... 13

        1.      Practical considerations and court congestion favor transfer to
                the Northern District of California................................................................ 13

        2.      The Northern District of California has a strong interest in resolving
                the dispute ..................................................................................................... 15

V.      CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affymetrix, Inc. v. Synteni, Inc.,*
  28 F. Supp. 2d 192 (D. Del. 1998)................................................................9, 10, 12

*Continental Cas. Co. v. American Home Assur. Co.,*
  61 F. Supp. 2d 128 (D. Del. 1999)............................................................................10

*In re Genentech,*
  566 F.3d 1338 (Fed. Cir. 2009)......................................................................8, 9, 12

*In re Hoffman-La Roche,*
  587 F.3d 1333 (Fed. Cir. 2009)...........................................................................8, 9

*Jumara v. State Farm Ins. Co.,*
  55 F.3d 873 (3d Cir. 1995)...................................................................................7, 8

*Krupp Int'l, Inc. v. Yarn Indus., Inc.,*
  615 F. Supp. 1103 (D. Del. 1985)............................................................................9

*In re Nintendo,*
  589 F.3d 1194 (Fed. Cir. 2009)......................................................................8, 9, 12

*Pennwalt Corp. v. Purex Indus., Inc.,*
  659 F. Supp. 287 (D. Del. 1986)........................................................................10, 11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
  549 U.S. 422 (2007)...................................................................................................9

*In re TS Tech. USA, Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008)......................................................................8, 9, 15

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964).................................................................................................15

*Virgin Wireless, Inc. v. Virgin Enters., Ltd.,*
  201 F. Supp. 2d 294 (D. Del. 2002)..........................................................................9

*In re Volkswagon of Am. Inc.,*
  545 F.3d 304 (5th Cir. 2008) .....................................................................................9

**STATUTES & RULES**

28 U.S.C. § 1391(c) .........................................................................................................9

28 U.S.C. § 1400(b) .........................................................................................................9

28 U.S.C. § 1404(a) .......................................................................................................... *passim*

Fed. R. Civ. P. 45 ........................................................................................................... 10

RLF1 3558650v.1

## I.   NATURE AND STAGE OF PROCEEDINGS

Plaintiffs (collectively "Apple") filed two patent lawsuits in this Court last month alleging that four defendants, who create cutting-edge smart phones in Taiwan, infringe 20 Apple patents. One of the lawsuits is a parallel action of a ten-patent complaint that Apple filed before the International Trade Commission. The infringement claim charts submitted with that complaint allege that the primary infringing features in nine of the ten patents are found in an innovative mobile operating system created by Google that Defendants use on certain of their smart phones. Similarly, some of the ten patents asserted in the other lawsuit likewise appear to target Google's mobile operating system. Because Apple and Google are both based in Northern California, Defendants High Tech Computer Corp., a/k/a HTC Corp. ("HTC Corp."), HTC America, Inc. ("HTC America"), and Exedea, Inc. ("Exedea") (collectively, "HTC") seek to transfer both cases to the place where the parties, the witnesses, and the key documents reside— the U.S. District Court for the Northern District of California.

Transfer to the Northern District of California would be more convenient for everybody involved in this case. First and foremost, many of the witnesses or documents are found there:

- Most of the named inventors work in the Northern District of California;

- All of Google's engineering, sales, and marketing personnel and key documents pertinent to this case are found in the Northern District of California;

- Qualcomm and Microsoft, whose hardware and software as used in Defendants' smart phones Apple appears to accuse of infringement, are much closer to the Northern District of California;

- Most of HTC's witnesses and documents are found in Taiwan or on the United States' West Coast; and

- The Northern District of California is Apple's home turf and thus is expected to be where its witnesses and documents will reside.

By contrast, not a *single* witness or key document to these cases appears to be found in the District of Delaware. No party is incorporated in Delaware. HTC has no business operations or personnel in Delaware; nor, at least based on initial investigation, does Apple.   Apple's allegations have no connection to the District of Delaware.

The interests of justice similarly favor transfer to the Northern District of California. The

inventions claimed in the patents-in-suit were developed there, as was the Google operating system implicated by Apple's infringement allegations. Accordingly, as compared to the District of Delaware, the Northern District of California has a far greater interest in resolving this dispute.

Faced with this striking imbalance, the Court should transfer.

## II.   SUMMARY OF ARGUMENT

1.     A motion to transfer should be granted where "the convenience of parties and witnesses" and "the interest of justice" point to another district where the case might have been brought. 28 U.S.C. § 1404(a).

2.     These cases could have been brought in the Northern District of California, where HTC (a) has operations and employees, and (b) engages in the alleged-infringing activity.

3.     The Northern District of California is more convenient for the parties and non-party witnesses. Apple maintains its corporate headquarters and conducts substantially all of its research, development, and design activities there. Furthermore, the Northern District of California is more convenient for HTC's witnesses, who are based primarily in Taiwan (and otherwise on the West Coast). The Northern District of California is also more convenient for the key third parties, including Google, which has provided two declarations in support of this motion. Several of Apple's patent assertions accuse Google's mobile operating system, which was developed in the Northern District of California—Google's home district and the location of its relevant witnesses and document. Apple has also targeted products designed by Qualcomm (based in San Diego, CA) and software provided by Microsoft (located in Redmond, WA). The vast majority of the alleged inventors on the 20 asserted patents are also presently found in the Northern District of California. In contrast, HTC is not aware of any relevant witnesses or documents in Delaware.

4.     The interest of justice also favors transfer to the Northern District of California. Because most of Apple's employees and documents are located in Northern California, and because both the asserted patents and the accused infringing technology were developed there (by Apple and Google, respectively), the Northern District of California has a far greater interest

2

in resolving this matter than does the District of Delaware.

### III.   STATEMENT OF FACTS

**A.    Apple developed the alleged inventions in the Northern District of California and is targeting a mobile operating system that Google designed there.**

The alleged inventions were developed within the Northern District of California. Indeed, as Apple itself represents, "[s]ubstantially all" of its research and development "has been conducted by employees located in the company's Cupertino, California, headquarters." *See Declaration of Ellison Wada ("Wada Decl.")* ¶ 2 , Ex. 1 ¶ 2.  Not surprisingly, then, the listed inventors have a strong connection to the Northern District of California:  all 69 of the alleged inventors listed on the 20 asserted patents hail from Northern California. *See* Wada Decl. ¶ 4, Ex. 3.  Based upon investigation to date, at least 54 of these 69 named inventors appear to work and live in Northern California today, and only 24 of those inventors appear still to work for Plaintiffs. *Id.* ¶ 45.  Only 11 inventors are confirmed to no longer reside in the Northern District of California. *Id.* ¶ 45.

Apple's ITC infringement contentions reveal that Apple believes nine of its ten patents asserted there (and in the parallel district-court action here) target Google's Android Operating System ("Android OS"), an innovative, open-source operating system for smart phones. *Id.* ¶ 3, Ex. 2 at 11 (Exhibit 23 to ITC Complaint at 3) ; Declaration of Andrew Rubin ("Rubin Decl.") ¶ 5.  As to the ten patents that Apple asserts in the second district-court action filed here, certain of those patents appear targeted toward the Android OS as well.  To take but one example, U.S. Patent No. 6,424,354 claims a method for allowing different software "objects"—including items like menus, buttons, and check boxes—to learn about changes in other objects. *See* C.A. No. 10-167, Compl. (D. I. 1), Ex. J.  It involves compiling information regarding which objects desire to learn about changes in other objects along with a method of informing the interested object about those changes. *Id.*  Objects are informed of changes in other objects only if they have registered their interest in learning of those changes. *Id.*

3

**B.    The Northern District of California is Plaintiffs' home district.**

Apple is a corporation organized under the laws of the state of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  C.A. No. 10-166 RK, Compl. (D. I. 1) ¶ 1.  NeXT is a wholly-owned subsidiary of Apple incorporated under the laws of the state of a California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  *Id.*  Cupertino is in Santa Clara County, which is within the Northern District of California.  Wada Decl. Exs. 4, 5 .

According to Apple's own representations, its activities and operations at issue in this case were all conducted within the Northern District of California at "Apple owned facilities for research and development and corporate functions in Cupertino, California."  *Id.* Ex. 1 ¶ 87. Again, "substantially all" of the research and development was done by Apple employees at those facilities.  *Id.*  In fact, Apple concedes that most of its key employees are located in Silicon Valley, California, within the Northern District of California.  *Id.* ¶ 89.

**C.    All relevant witnesses and documents from third-party Google, whose Android OS is central to this case, are found in the Northern District of California.**

HTC has worked with and continues to work with Google, Qualcomm, and Microsoft in developing, designing, and manufacturing the HTC Mobile Devices.  *See* Declaration of Jason Mackenzie ("Mackenzie Decl.") ¶ 10.

Google maintains its headquarters in Mountain View, California, which is in the Northern District of California.  *See* Declaration of Brian Ong ("Ong Decl.") ¶ 2; *see also* Wada Decl. ¶ 7. In August 2005, Google acquired Android Inc., which had focused on developing operating systems for smart phones.  Rubin Decl. ¶ 4.  Before the acquisition, Android had been based in Palo Alto, California, approximately ten miles from Google, and also in the Northern District of California.  *Id.*; *see also* Wada Decl.¶ 7.  Upon the acquisition, the co-founder and CEO of Android as well as many engineers joined Google in Mountain View and continued working on operating systems for smart phones, which eventually resulted in the Android OS.  *Id.* ¶¶ 3-5. Google devoted considerable effort into developing the Android OS.  *Id.* ¶ 6.

The development of the Android Operating System, from the work at Android to the

present, took place in Silicon Valley. Rubin Decl. ¶ 6. The individuals primarily responsible for the research, design and development of the Android OS are located at Google's facilities in Mountain View, California. *Id.* Moreover, the teams currently working on the technical side and operation of the Android OS are based in Mountain View, California. *Id.* Finally, the team leaders responsible for working with HTC to develop the smart phones that use the Android OS are led by personnel that are located at Google's facilities in Mountain View, California.. *Id.* ¶ 7.

Google's records and business documents relevant to this lawsuit are also all found in the Northern District of California. Research, design, development, and technical-operation materials that relate to the Android OS are found, either physically or via electronic access, at Google's facilities in the Northern District of California. Rubin Decl. ¶ 6. All of Google's primary business documents and records that relate to smart phones that use the Android OS and the marketing and distribution of the Android OS are similarly found, either physically or via electronic access, at Google's facilities in the Northern District of California. Ong. Decl. ¶ 5; Rubin Decl. ¶ 7.

**D.     HTC has an office in the Northern District of California, which is also closer to HTC's operation centers in Taiwan, ROC and Bellevue, Washington.**

HTC devotes considerable money and employee time to develop its cutting-edge smart phones. Part of that effort includes a design facility in San Francisco, California, which focuses on hardware and usability design for HTC's smart phones. Declaration of Jason Mackenzie ("Mackenzie Decl.") ¶ 8. Roughly 16 people work at HTC's San Francisco office. *Id.* One senior employee in that office plays a key role in HTC's overall product-roadmap portfolio design, an important element of HTC's smart phones. *See id.* The San Francisco office also has design documents related to HTC's smart phones. *See id.* ¶ 5.

HTC America's headquarters, which are also HTC's principal U.S. operations, are in Bellevue, Washington. *See id.* ¶¶ 3, 5, 9. HTC's sales, marketing, and product-support activities targeted to the American market are managed from the Bellevue office. *See id.* ¶ 9. Compared to Taiwan, discussed below, a relatively small number of engineers who worked on the accused-infringing hardware and software work in the state of Washington. *See id.* ¶ 6. Related design

and development documents also reside in HTC's Bellevue location. *See id.* ¶ 5. Some design documents are also located in Seattle. *See id.* And sales-and-marketing documents, including sales literature, forecasts, and market analyses that pertain to the U.S. market, are maintained primarily in Bellevue, Washington (and to a lesser degree in Taiwan). *See id.* Both Seattle and Bellevue, Washington are more conveniently located to the Northern District of California than to the District of Delaware. *See* Wada Decl. ¶¶ 48, 49.

HTC's relevant evidence is located primarily in Taiwan, ROC. Most of the HTC engineers who work on hardware and software design, development, and integration for HTC's smart phones work and live in Taiwan, ROC. *Id.* ¶ 6. Most of the engineers who work on smart-phone manufacturability also work and live in Taiwan, ROC. *Id.* For those potential witnesses, travel from Taipei, Taiwan to San Francisco, California takes considerably less time and is more convenient than travel to Wilmington, Delaware. Direct flights from Taipei to San Francisco take approximately 11 hours, but no direct flights exist from Taipei to Wilmington (or to the nearby Philadelphia airport). Wada Decl. ¶ 51, Ex. 44. Consequently, the approximate travel time to Wilmington, including at least one layover on the West Coast, is at least 18 hours. *Id.* ¶ 50, Ex. 43. In addition, documents that relate to HTC's engineering, development, and manufacturing of the accused-infringing products, as well as related royalty and partner agreements, are maintained primarily in Taiwan. *Id.* ¶ 5.

Finally, HTC offers repair and customer support for HTC smart phones sold in America through facilities in Houston, Texas and Bellevue, Washington. *Id.* ¶ 7.

**E.    Other important third parties are found closer to the Northern District of California.**

Qualcomm Inc., which designed and sells the baseband processing chip identified in Apple's ITC infringement allegations, is based in San Diego, California. *See* Mackenzie Decl. ¶ 10; Wada Decl. ¶ 45, Ex. 2 at 11 (HTC Exhibit 23 at 3) ("The HTC Nexus One contains a Qualcomm QSD 8250"). And Microsoft Corp., which designed and sells the Windows Mobile operating system used on certain HTC phones, is based in Redmond, Washington. *See* Mackenzie Decl. ¶ 10; Wada Decl. ¶ 46.

### F.     Neither the parties nor evidence is located in the District of Delaware.

HTC Corporation, HTC America, HTC (B.V.I) Corp. ("HTC (BVI)"), and Exedea do not have any personnel, offices, or business operations in Delaware. *See* Mackenzie Decl. ¶ 3. Furthermore, HTC is not aware of any corporate repository of engineering, development, manufacturing, or sales-and-marketing documents in Delaware. *See id.* ¶ 5. Similarly, HTC is unaware of any potential witnesses—specifically HTC engineers—who work in Delaware. *See id.* ¶ 6. Finally, HTC has no repair or customer-support facility in Delaware. *See id.* ¶ 7.

Not a single party in this case is incorporated in Delaware or has its principal place of business in Delaware. HTC Corporation is a Taiwanese company with its principal place of business in Taoyuan, Taiwan, ROC. *See id.* ¶ 3. HTC America is incorporated in Texas and has its principal place of business in Bellevue, Washington. *See id.* HTC (BVI) is a financial holding company that is incorporated and has its principal place of business in the British Virgin Islands. *See id.* Exedea is incorporated in Texas and has its principal place of business in Texas. *See id.* As discussed above, both Plaintiffs are incorporated in California and based in Cupertino, California. C.A. No. 10-0166 RK Compl. (D. I. 1) ¶ 1.

Nor are there any relevant third-party connections to the District of Delaware. Based on investigation to date, none of the alleged inventors is believed to reside in Delaware. Wada Decl. ¶ 45. Google has no offices, facilities, or Android personnel in the District of Delaware. Ong Decl. ¶ 6. Google did not conduct any development work on Android OS in Delaware and is not currently conducting any technical work on Android OS there. Rubin Decl. ¶ 8. Nor are any foreseeable Google internal documents, electronically-stored information, or things physically present in Delaware. *Id.*; Ong. Decl. ¶ 6.

## IV.     ARGUMENT

The Court should grant HTC's motion because venue is not only proper in the Northern District of California but "the litigation would more conveniently proceed and the interest of justice be better served" in that forum. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995). Transfer first requires that the claims "might have been brought" in the

7

transferee venue. 28 U.S.C. § 1404(a). The inquiry then turns to whether the litigation would more conveniently proceed and the interests of justice be better served in the transferee venue, considering both "private" and "public" interest factors. *Jumara*, 55 F.3d at 879. Here, the relevant private interests include: the plaintiff's choice of forum; the defendant's preferred forum; the convenience of the witnesses; the convenience of the parties; and where the claim arose. *Id.* at 879. Relevant public interests include: practical considerations that could make the trial easier, quicker, or less expensive; court congestion; and local interest in the controversy. *Id.* at 879-80.[1]

The Federal Circuit has recently clarified the considerations relevant to transferring patent infringement actions under Section 1404(a). For example, in *In re TS Tech. USA, Corp.*, the Federal Circuit mandated transfer to Ohio where the case had no unique connection to the district in which it was filed, no witnesses were present there, and the district court "gave too much weight" to the plaintiff's choice of venue. 551 F.3d 1315, 1319-23 (Fed. Cir. 2008). Similarly, in *In re Genentech*, the Federal Circuit found a clear abuse of discretion in denying transfer where, *inter alia*, a "substantial number of material witnesses reside[d] within the transferee venue [the Northern District of California] and California and no witnesses" resided in the district in which it was filed. 566 F.3d 1338, 1345 (Fed. Cir. 2009). And in *In re Hoffman-La Roche*, the Federal Circuit held that the transferee district's connection to the conduct at issue, local interest, access to sources of proof, witnesses residing there, and the transferor court's congestion amounted to a "stark contrast in relevance, convenience, and fairness between the two venues." 587 F.3d 1333, 1336 (Fed. Cir. 2009). Most recently, in *In re Nintendo*, witness convenience weighed heavily in the Federal Circuit's decision to grant mandamus where witnesses residing in Asia and on the West Coast would be forced to travel significantly farther if

---

[1]Public interest factors HTC does not address herein as neutral or inapplicable are the enforceability of the judgment; public policies of the fora; and the trial judge's familiarity with the applicable state law. *See Jumara*, 55 F.3d at 879-80.

the case proceeded in Texas instead of Washington state. 589 F.3d 1194, 1199 (Fed. Cir. 2009).

Here, as in *TS Tech*, *Genentech*, *Hoffman-LaRoche*, and *Nintendo*, there is a stark contrast in relevance, convenience, and fairness between the Northern District of California and the District of Delaware.

**A.      Apple could have brought this action in the Northern District of California.**

The prerequisite that these cases be transferred to a district where they might have been brought is satisfied. Apple could have brought this action against HTC in the Northern District of California, which is a proper venue under 28 U.S.C. §§ 1391(c) and 1400(b). As with Delaware, HTC engages in the activity alleged to infringe in the Northern District of California and so is subject to specific jurisdiction on that basis.

**B.      The private-interest factors weigh heavily in favor of transfer to the Northern District of California.**

**1.      Apple's choice of a Delaware forum deserves little, if any, deference.**

Apple's choice of Delaware as a forum should be afforded minimal if any deference in these cases because Delaware is neither its "home turf," nor meaningfully connected to the operative facts in this case. *See Virgin Wireless, Inc. v. Virgin Enters., Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002) (citation omitted). The "'home turf rule' is merely a short-hand way of saying that ... the weaker the connection between the forum and either the plaintiff or the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 199 (D. Del. 1998); *see also Krupp Int'l, Inc. v. Yarn Indus., Inc.*, 615 F. Supp. 1103, 1106 (D. Del. 1985) (recognizing burden on moving party to show that convenience favors transfer is lower where plaintiff chooses not to bring suit in its "home turf" or in a forum connected to its claims).[2]

---

[2]Indeed, recent decisions addressing the plaintiff's choice of venue have criticized its treatment as a separate "factor," recognizing that it really corresponds to a moving party's burden in demonstrating that the transferee venue is more convenient. *See In re TS Tech*, 551 F.3d at 1320 (holding district court erred in giving "inordinate weight" to plaintiff's choice of venue); *In re Volkswagon of Am. Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (recognizing that plaintiff's choice of venue is to be treated as a burden-of-proof question); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429-30 (2007) (indicating that a plaintiff's choice of forum in the analogous *forum non conveniens* analysis corresponds to the *burden* a moving party must

Contrary to the normal transfer request, HTC here seeks to transfer the case *to* Apple's "home turf."[3] Because Apple's choice of forum is entitled to minimal deference at most, Apple must instead offer "substantive reasons indicating that the convenience to it of litigating in this forum . . . approaches the inconvenience which trial in this forum will impose on the defendants and their witnesses." *See Cont'l Cas. Co. v. American Home Assur. Co.,*, 61 F. Supp. 2d 128, 131 (D. Del. 1999) (citation omitted). Apple cannot offer *any* substantive reasons for the convenience of litigating in Delaware, as shown below.

### 2. The Northern District of California is a far more convenient forum for the witnesses, especially third-party witnesses.

Witness convenience is a critical factor under Section 1404(a), and here it strongly favors transfer to California. As courts in this district have recognized in granting motions to transfer, "the location of potential witnesses and, thus, their ability to be subject to compulsory process has weighed heavily in the balance of convenience analysis." *Affymetrix,*, 28 F. Supp. 2d at 203 (citation and internal quotation omitted); *see also Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986) (describing the availability of witnesses as the "most crucial factor" in deciding motion to transfer). The problem of securing live witnesses is even more acute where, as here, a jury has been demanded. *See Pennwalt*, 659 F. Supp. at 291.

HTC is currently aware of no witness who is found in the District of Delaware. Even at this early stage, however, there are *scores* of potential witnesses who are found in the Northern District of California. HTC has identified 54 of the named inventors of the patents-at-issue who appear to reside in the Northern District of California. Based upon preliminary defense investigation of public sources, 24 of these named inventors appear to work for Apple. *See* Wada Decl. ¶ 46. The other 30 appear not to work for Apple but continue to work and likely reside in the Northern District of California. *See id.* ¶ 46. In addition to proving more convenient to these witnesses, the Northern District of California would also prove more

---

meet).

[3]In the District of Delaware, "home turf" is defined as the forum closest to the plaintiff's residence or principal place of business at the time the lawsuit is filed. *See Continental Cas. Co. v. American Home Assur. Co.*, 61 F. Supp. 2d 128, 131 n.5 (D. Del. 1999).

equitable to HTC, which could issue trial subpoenas to compel the inventors to testify at trial. That option is unavailable in Delaware. Fed. R. Civ. P. 45.

Furthermore, as discussed above, Apple's asserted patents target the Google Android OS. Google's key witnesses and documents are also all found in the Northern District of California. The individuals primarily responsible for Android OS's research, design, and development are based there, as are the teams presently working on the technical side and operation of Android OS. Rubin Decl. ¶ 7. The Google team leaders responsible for working with HTC to develop the smart phones that use Android OS are led by personnel at Google's offices in the Northern District of California. Ong Decl. ¶ 5. Google personnel in its offices in the Northern District of California also lead the team leaders responsible for the marketing and distribution of Android OS. *Id.* ¶ 5. Google's research, design, development, and technical-operation materials that relate to the Android OS, as well as primary business documents and records related to smartphones using the Android OS and the marketing and distribution of Android OS, are all found at Google's facilities in the Northern District of California, either physically or via electronic access. Rubin Decl. ¶¶ 6, 7; Ong. Decl. ¶ 5.

In addition, HTC has identified numerous other witnesses for whom litigation in the Northern District of California will be significantly less burdensome than in Delaware. Qualcomm, Inc., which designed and sells the baseband chip identified in Apple's infringement allegations, is based in San Diego, California. *See* Mackenzie Decl. ¶ 10; Wada Decl. ¶ 45, Ex. 2 at 11 (Exhibit 23 to ITC Complaint at 3). As a result, Qualcomm witnesses would be subject to trial subpoena in the Northern District of California. Moreover, given that Microsoft Corp. designed and sells the Windows Mobile operating system found in certain of the accused devices, there are likely witnesses who reside in Washington state, in or around Microsoft's headquarters in Redmond, Washington. Mackenzie Decl. ¶ 10. Travel from Redmond to the Northern District of California is much more convenient than to Delaware. *See* Wada Decl. ¶¶ 48, 49.

Finally, given that the alleged inventions were developed in the Northern District of California, all of the 69 named inventors were listed as residing there, and that much of the

11

development of the accused devices took place there, the parties are likely to identify even more witnesses who reside there after discovery commences. There can be no question that here, as in *Pennwalt*, the "vast majority of nonparty witnesses reside in California." *Pennwalt*, 659 F. Supp. at 291 (granting transfer to California where trial in Delaware would deny defendants the "opportunity to procure live testimony in support of their case"); *see also In re Nintendo*, 589 F.3d at 1199 (finding that the cost and convenience for witness attendance clearly favors transfer where "[e]ven without including the four Japanese witnesses who would each have to travel an additional 1,756 miles or 7 hours by plane to Texas as compared with Washington State, the average travel required for each of the remaining six identified witnesses to Texas is approximately 700 miles more than to Washington").

That so many potential witnesses reside in California—who would be subject to compulsory process in California but not in Delaware—is "critical" to the transfer analysis. *See Affymetrix*, 28 F. Supp. 2d at 203; *see also In re Genentech*, 566 F.3d at 1345 (where no known witnesses resided in the district where complaint was filed, "[t]he fact that the transferee venue is a venue with usable subpoena power … weighs in favor of a transfer, and not only slightly"). To ensure the most equitable access to relevant witnesses at trial, this case should proceed in the Northern District of California.

### 3. The Northern District of California would be a far more convenient forum for both parties.

This is not a case where HTC seeks simply to shift convenience from Apple to itself; Delaware is an inconvenient forum for both parties. With respect to Apple, this litigation would be more convenient in the Northern District of California, where Apple is headquartered and substantially all of its operations—and documents and witnesses—are based.

With respect to HTC, proceeding in the Northern District of California rather than in the District of Delaware would be far more convenient. HTC has no personnel, facilities, or business operations in Delaware. Mackenzie Decl. ¶ 3. In contrast, HTC has a design facility in San Francisco that employs approximately 16 people, including one who helps make strategic decisions related to HTC's smart phones. *Id.* ¶ 8. Most of the relevant HTC engineers work and

12

live in Taiwan, ROC.  Mackenzie Decl. ¶ 6.  For each of these witnesses, transfer to the Northern

District of California would save at least 7 hours of travel time *each way*.  Wada Decl. ¶¶ 50, 51.

The key documents on HTC's engineering, development, and manufacturing of the accused

infringing smart phones, as well as related royalty and partner agreements, are maintained

primarily in Taiwan.  Mackenzie Decl. ¶ 5.  HTC's sales, marketing, and product-support

activities targeted to the American market are managed from Washington state, which is more

conveniently situated to San Francisco than Wilmington.  Mackenzie Decl. ¶ 9; *see* Wada Decl.

¶¶ 48, 49.  And sales-and-marketing documents, including sales literature, forecasts, and market

analyses, that pertain to the U.S. market are maintained primarily in Bellevue, Washington (and

to a lesser degree in Taiwan).  *See id.*

> **4.     Apple's claims arose in the Northern District of California.**

To the extent that Apple's claims are based in any federal judicial district, they are based

in the Northern District of California, where key evidence and witnesses are located.  Apple is

there; all 20 of the asserted inventions were apparently conceived and reduced to practice there;

the patents were issued to inventors who resided (and may still reside) there; and the Google

team that HTC collaborated with on the alleged infringing technology is based there.  *See* Wada

Decl. ¶ 2, Ex. 1; Rubin Decl. ¶ 7.  None of those things can be said of the District of Delaware.

**C.     The Public Interest Factors Also Weigh in Favor of Transfer to the Northern
          District of California**

> **1.     Practical considerations and court congestion favor transfer to the Northern
>           District of California.**

Significantly, as explained above, practical considerations that could make the trial

easier, quicker, more fair, and less expensive strongly favor the Northern District of California

given its greater convenience to the witnesses, parties, and access to proof.  Court congestion is

closely aligned with these practical considerations and is therefore also addressed here.  Both

these factors favor transfer to the Northern District of California.

As to court congestion, case-disposition statistics demonstrate that the Northern District

of California offers a shorter median time to trial—nearly a full year less—than the District of

Delaware.[4]  Moreover, vacancies in this Court's judgeships have created a backlog.  Thus, court congestion tips the scale further towards transfer.

Practical considerations also weigh in favor of transfer for other reasons; specifically, considerations of judicial efficiency.  Although Apple recently advised the Court of some "overlap" between the 20 patents-in-suit here and the 18 patents that Apple has asserted as counterclaims in the cases brought by Nokia, they are at present assigned to different judges.[5]  Presuming that arrangement continues, no efficiencies are gained by keeping the HTC cases in Delaware.

In any event, there is little basis to relate the cases, or to keep them related by denying transfer.  There are 9 patents asserted by Apple against HTC in these cases *only*, in addition to and distinct from the 11 patents Apple contends overlap with those asserted in its counterclaims against Nokia.  *See id.*  In its complaints, Nokia asserts 17 of its patents against Apple—and Apple, in turn, asserts counterclaims against Nokia concerning 7 patents that Apple does not assert against HTC.  *See id.*  Even assuming some degree of overlap among these cases, it would appear impractical to have all patents tried before a single judge.  The litigation of *four infringement actions involving 44 patents* in an already overwhelmed district would run counter to the practical considerations and court-congestion factors.  Indeed, it makes no practical sense to have a single judge handle the claim construction of so many patents.  This is particularly true when that judge is in a district that has already instituted measures—as here—to send cases out to other districts as an emergency docket control measure.  Practical considerations strongly favor transfer.

---

[4] According to the Federal Judicial Caseload Statistics for the most recent reporting period, 2009, the median time interval in months from the filing of a case to trial is 32.2 months in the District of Delaware and 25.5 months in the Northern District of California.  Wada Decl. ¶ 54, Ex. 47.

[5] *See* C.A. No. 10-0166 RK, March 24, 2010 Letter to Court (D.I. 5); C.A. No. 09-0791 GMS, *Nokia v. Apple, Inc.*, Compl. (D. I. 1), Ans. (D. I.14); C.A. No. 09-1002 GMS, *Nokia v. Apple, Inc.*, Compl. (D. I. 1), Ans. (D. I. 12).

2.     **The Northern District of California has a strong interest in resolving the dispute.**

There can be no question that the Northern District of California has a strong local interest in resolving this dispute.  This is an infringement action by California-based plaintiffs, concerning 20 alleged inventions that were all conceived and developed in the Northern District of California, and described in patents issued to residents of the Northern District of California. *See* Wada Decl. ¶ 2, Ex.1.

In contrast, this case has no meaningful connection to the District of Delaware. Nationwide sales of products or services do not create any local interest.  *See In re TS Tech,* 551 F.3d at 1321(ruling that sales of accused product in the district did not create any "more or less of a meaningful connection to th[e] case" for citizens of that district than citizens of any other where the products were sold).

In sum, the Northern District of California has a strong interest in deciding this case, while the District of Delaware has "no relevant connection [to] the actions giving rise to this case."  *Id.*  Thus, this factor also weighs in favor of transfer.

## V.     CONCLUSION

HTC seeks to have this case proceed in the jurisdiction that is most convenient to witnesses, third parties, and the parties themselves.  Transfer of these cases to the Northern District of California will serve section 1404(a)'s purpose: "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *See Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal citations omitted). HTC therefore respectfully requests that the Court transfer these cases to the Northern District of California "for the convenience of parties and witnesses" and "in the interest of justice."

15

*Of Counsel:*

Robert A. Van Nest
Ashok Ramani
Leo L. Lam
Eugene M. Paige
Jennifer A. Huber
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
(415) 391-5400


Dated:  April 9, 2010

/s/ Stephen M. Ferguson
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Kelly E. Farnan (#4395)
Farnan@rlf.com
Stephen M. Ferguson (#5167)
Ferguson@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC America, Inc. and Exedea, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2010, I caused to be served by **electronic mail and hand delivery** copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard K. Herrmann
Mary B. Matterer
Amy A. Quinlan
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
rherrmann@morrisjames.com
mmatterer@morrisjames.com
aquinlan@morrisjames.com

I further certify that on April 9, 2010, I caused to be served by **electronic mail** copies of the foregoing document upon the following counsel of record:

Robert G. Krupka
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
bob.krupka@kirkland.com

Bryan S. Hales
Marcus E. Sernel
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
bryan.hales@kirkland.com
marc.sernel@kirkland.com

Gregory S. Arovas
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
greg.arovas@kirkland.com

Kenneth H. Bridges
Michael T. Pieja
Brian C. Kwok
Wong, Cabello, Lutsch, Rutherford & Brucculeri
LLP
540 Cowper Street, Suite 100
Palo Alto, CA 94301
kbridges@WongCabello.com
mpieja@WongCabello.com
bkwok@WongCabello.com

                    /s/ Stephen M. Ferguson
                    Stephen M. Ferguson (#5167)
                    ferguson@rlf.com