IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., NeXT SOFTWARE, INC., f/k/a/ NeXT COMPUTER, INC.,<br><br>                Plaintiffs,<br><br>v.<br><br>HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., EXEDEA, INC.,<br><br>                Defendants. | C.A. No. 10-166-RK<br><br>**REDACTED – PUBLIC VERSION** |
| APPLE, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., and EXEDEA, INC.,<br><br>                Defendants. | C.A. No. 10-167-RK<br><br>**REDACTED – PUBLIC VERSION** |

**REPLY BRIEF OF DEFENDANTS HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., AND EXEDEA, INC. IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

*Of Counsel:*

Robert A. Van Nest
Leo L. Lam
Ashok Ramani
Eugene M. Paige
Ajay S. Krishnan
John Bostic
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
(415) 391-5400

John W. Shaw (#3362) jshaw@ycst.com
Karen L. Pascale (#2903) kpascale@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
100 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600

*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc.*

June 9, 2010
Redacted Version: June 18, 2010

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A. The Northern District of California is a More Convenient Forum. ................ 2

        1. Because Delaware is neither Apple's home turf nor meaningfully connected to the operative facts, Apple's choice of venue deserves no deference. ............................................................ 2

        2. Numerous third-party witnesses are located in the Northern District of California. ........................................................................... 3

        3. The Northern District of California is far more convenient for all parties. ............................................................................................ 6

        4. The remaining private interest factors also heavily favor transfer. ........................................................................................... 6

    B. The Interests of Justice Strongly Support Transfer. ....................................... 7

        1. Apple's belated and tactical consolidation motion does not justify denying transfer. ............................................................................... 7

        2. Case congestion and judicial efficiency favor transfer. ..................... 9

        3. The Northern District of California has a strong local interest in adjudicating Apple's claims against HTC. .................................... 10

III. CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998) ............................................................................... 2, 5

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. 2008) ............................................................................. 4

*Continental Cas. Co. v. Am. Home Assurance Co.*,
  61 F. Supp. 2d 128 (D. Del. 1999) ................................................................................ 10

*Ferens v. John Deere Co.*,
  494 U.S. 516, 529-30 (1990) ......................................................................................... 10

*Google, Inc. v. Traffic Info.*,
  LLC, C.A. No. 09-642-HU, 2010 WL 743878 (D. Or. Feb. 2, 2010) ............................. 8

*Gulf Oil v. Gilbert*,
  330 U.S. 501 (1947) ........................................................................................................ 5

*Harvey v. Apple Inc.*,
  E.D. Tex. C.A. No. 2:07-CV-327-TJW-CE) .................................................................. 3

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................................. 4, 5, 6, 7

*In re TS Tech USA Corp*,
  551 F.3d 1315, 1321 (Fed. Cir. 2008) .......................................................................... 2, 10

*In re Volkswagen of America, Inc.*,
  545 F.3d 304, 318 (Fed. Cir. 2008) ................................................................................. 2

*In re Volkswagen*,
  566 F.3d 1349 (Fed. Cir. 2009) ....................................................................................... 8

*Magnavox Co. v. APF Elecs., Inc.*,
  496 F. Supp. 29 (N.D. Ill 1980) ...................................................................................... 8

*Mekiki Co. v. Facebook, Inc.*,
  C.A. No. 09-745-JAOP, 2010 U.S. Dist. LEXIS 55638
  (D. Del. June 7, 2010) .................................................................................................. 2, 6

*Nilssen v. Osram Sylvania, Inc.*,
  C.A.No. 00-695-JJF, 2001 WL 34368395 (D. Del. 2001) ............................................ 5, 6

*Pennwalt Corp. v. Purex Indus., Inc.*,
  659 F. Supp. 287 (D. Del. 1986) ..................................................................................... 5

*Regents v. Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997) ....................................................................................... 8

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
  230 F. Supp. 2d 655 (E.D. Pa. 2002) .............................................................................. 2

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) .................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 45(b)(2)(C) ................................................................. 4

## I. INTRODUCTION

Apple does not and cannot dispute that the Northern District of California:

- has subpoena power over nearly all of the 69 named inventors of the asserted patents;
- is where a key element of the accused products—*i.e.*, the Android Operating System ("Android OS")—was developed;
- has subpoena power over nearly all of the Google personnel who developed, marketed, and distributed the Android OS, and also collaborated with HTC to develop certain accused products;
- has subpoena power over Qualcomm personnel responsible for designing the baseband chip identified in Apple's infringement contentions;
- is home to an HTC office with personnel relevant to this case;
- is substantially more convenient to HTC witnesses who reside in Washington state and Asia; and
- is the location of Apple's worldwide headquarters and principal place of business.

Likewise, Apple cannot claim that *any* witnesses, documents, or other evidence is located in the District of Delaware, or that transfer would in any fashion inconvenience Apple.

Apple's sole basis for opposing transfer is founded on two patent cases pending in Delaware between Apple and Nokia. Apple claims that it sued HTC in this District because of those cases, and rather than transfer this case, the Court should consolidate the HTC and Nokia cases. But Apple's claim is belied by its litigation conduct. Apple did not identify the Nokia cases as related when it filed its complaints against HTC. Instead, Apple wrote Chief Judge Sleet three weeks after filing these suits, saying only that it had recently realized the overlap of some of its own patents among the cases. Indeed, in the *more than three months* since they were filed, Apple did not move to consolidate the HTC cases with the Nokia cases. Not until it chose to oppose HTC's transfer motion did Apple seek consolidation on the very same day. There is only one credible reason for Apple's belated consolidation request: Apple cannot meet HTC's motion to transfer on the merits.

Consolidation of the HTC and Nokia patent cases would not make sense. At most three of ten patents Apple asserted against HTC in the un-stayed case, it also asserted against Nokia. Consolidation would only *undermine* judicial efficiency by requiring a single judge to administer a 44-patent monstrosity. Quotes from an HTC brief seeking consolidation in the International

Trade Commission ("ITC") do not suggest otherwise; in fact Apple, in opposing consolidation in the ITC, made several arguments that undercut its opposition to HTC's transfer motion in this Court. Rather than being distracted by what the parties said in litigating an unrelated motion before the ITC, this Court should focus on the statutory transfer factors—each of which favors transfer.

## II.     ARGUMENT

### A.     The Northern District of California is a More Convenient Forum.

#### 1.     Because Delaware is neither Apple's home turf nor meaningfully connected to the operative facts, Apple's choice of venue deserves no deference.

Apple asks the Court to defer to its choice of a Delaware forum as not "arbitrary." *See* Apple Opp. to Transfer Mot. ("Opp.") (D.I. 22)[1] at 10. But Delaware law affords only minimal deference to a plaintiff seeking to avoid transfer from a district that is neither its "home turf" nor meaningfully connected to the operative facts. *See Mekiki Co. v. Facebook, Inc.*, C.A. No. 09-745-JAOP, 2010 U.S. Dist. LEXIS 55638 at *8-*10 (D. Del. June 7, 2010) (granting motion to transfer to Northern District of California, where defendant had lower burden in seeking transfer because plaintiff's chosen forum was neither its "home turf" nor connected to its claims); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 199 (D. Del. 1998).

Just as Apple cannot dispute that its "home turf" is in the Northern District of California, it cannot show that Delaware is meaningfully connected to the operative facts. Courts have uniformly rejected Apple's argument that sales of accused products in this District mean that it bears some connection to this case; in this regard, Delaware has no more connection this case than any other District. *See, e.g., Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (granting motion to transfer where plaintiff could show no connection to its choice of forum beyond the sale of allegedly infringing products); *see also In re TS Tech USA Corp*, 551 F.3d 1315,1321 (Fed. Cir. 2008) (noting that it "stretches logic" to say that sales of an infringing product give rise to a meaningful connection where the same "could apply virtually to any judicial district or division in the United States") (quoting *In re Volkswagen of America, Inc.*, 545 F.3d 304, 318 (Fed. Cir. 2008)). Apple itself cited this law in

---

[1] For ease of reference, citations to docket entries are to C.A. No. 10-167-RK.

support of its efforts to transfer a case from the Eastern District of Texas to the Northern District of California, noting that "aside from the fact that the [accused products] are available for purchase here—just as they are in every other judicial district in the country" the plaintiff's preferred forum "has no connection to the dispute underlying this action." Ex. 1 at 1 (Apple's Mot. to Transfer Venue, *Harvey v. Apple Inc.*, E.D. Tex. C.A. No. 2:07-CV-327-TJW-CE).[2] The same is true here.

To the extent that Apple suggests it filed in Delaware because of the Nokia cases, its claim is belied by both its failure to identify those cases as related when filing its complaints against HTC and its over-three-month delay before moving to consolidate. *See* Exs. 2, 3 (Civil Cover Sheets) (failing to indicate the existence of any "related" matters).[3]

Thus, Apple's having filed suit in this District deserves no deference.

### 2. Numerous third-party witnesses are located in the Northern District of California.

HTC has provided substantial and specific evidence showing that there are scores of third-party witnesses who are found in California, including:

- 54 named inventors of the patents-at issue, 30 of whom are *not* presently Apple employees and are therefore true third-party witnesses;
- The majority of Google personnel responsible for the design and development of the Android OS;
- The majority of Google personnel responsible for working with HTC to develop certain accused devices;
- The majority of Google personnel responsible for the marketing and distribution of the Android OS; and
- Qualcomm employees responsible for designing and selling the chip identified in Apple's infringement allegations.

*See* HTC Opening Brief (D.I. 9) at 10-11.[4] HTC has also shown that there are likely additional

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Karen L. Pascale submitted with this Reply Brief.

[3] Notably, Apple filed it complaints and corresponding cover sheets in its cases against HTC well after its assertion of counterclaims in the Nokia cases alleging infringement of ostensibly overlapping actions. *See* Ex. 4 (Apple Answers and Counterclaims in Nokia cases).

[4] California district courts can compel trial testimony of non-party witnesses throughout the state pursuant to Federal Rule of Civil Procedure 45(b)(2)(C), providing that a subpoena may be served anywhere within the state of the issuing court if authorized by state statute, and Section

material third-party witnesses residing in the Northern District of California because all 20 of the patents at issue and much of the accused technology were developed in Silicon Valley.

Apple presents *no factual opposition* to these showings. Indeed, it has elsewhere conceded that Google employees who developed the Android OS will be critical third-party witnesses because "[t]he accused HTC products are based on the Android software platform ... developed by Google." Ex. 5 at 15 (Apple's Opp. to Staff, Nokia, and HTC's Mot. for Partial Consolidation); *see also id.* at 7 ("Apple will be required to take extensive discovery from Google ...."). And while it insisted on venue-related discovery, Apple largely ignores the facts that discovery confirmed: that the top personnel primarily responsible for the engineering, marketing, distribution, sales, research, design, and development of the Android OS, including the group leader, Andy Rubin, are located in the Northern District of California. ████████████████████████████████████████████████████████████████████████████

Unable to counter the operative facts, Apple misconstrues the law by claiming that HTC must prove that *every single* Google engineer who worked on Android OS is in the Northern District of California. *See* Opp. at 14-15. The law does not demand certainty at this pre-discovery phase. *See, e.g., In re Genentech,* 566 F.3d 1338, 1343-44 (Fed. Cir. 2009) ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of a transfer on that basis is unnecessary."). Further, Apple cites no decision that would require *all* third-party witnesses to reside in the transferee venue. HTC has more than met the applicable standard by showing that scores of third-party witnesses located in the Northern District of California possess relevant information.

Nor, as Apple suggests, must HTC prove that third-party witnesses from California are

---

1989 of the California Code of Civil Procedure, which authorizes statewide service. *Brackett v. Hilton Hotels Corp.,* 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008).

unwilling or unable to attend trial in Delaware. It is sufficient for the venue-transfer analysis if the witness is not subject to a court's subpoena power. *See, e.g., Affymetrix, Inc. v. Synteni*, Inc., 28 F. Supp. 2d at 203 (explaining that witnesses' "ability to be *subject to compulsory process* has weighed heavily in the balance of convenience analysis") (citation and internal quotation omitted) (emphasis added); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986) ("It is desirable to hold trial at a place where the personal attendance of witnesses *through the use of subpoena power* can be reasonably assured) (emphasis added); *see also In re Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with *usable subpoena power* . . . weighs in favor of a transfer, and not only slightly.") (emphasis added).[5]

Apple's assurance that it would "make every effort" to bring witnesses to trial is meaningless. Opp. at 16, n.13. The "mere assurance that [] individuals will appear at trial is not the same thing as having them amenable to the subpoena power of the trial court." *Affymetrix*, 28 F. Supp. 2d at 205 (internal citation and quotation omitted). Indeed, "even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience." *Id.* (internal quotation and citation omitted). Similarly, courts have rejected Apple's position that video testimony is an adequate substitute for live testimony. *See, e.g., Nilssen v. Osram Sylvania, Inc.*, C.A.No. 00-695-JJF, 2001 WL 34368395 at *3 (D. Del. 2001) ("[V]ideotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because video depositions are unlikely to hold the rapt attention of a jury.") (internal quotation and citation omitted); *see also Gulf Oil v. Gilbert*, 330 U.S. 501, 511 (1947) ("[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.").

---

[5] It is surprising that Apple minimizes the importance of subpoena power over third-party witnesses at trial, given Apple's arguments to the contrary in seeking transfer of another case. *See* Ex. 1 at 2 ("And none of the foreseeable Apple witnesses for this action is within the subpoena power" of plaintiff's chosen venue.); *id.* at 10 ("In addition, the Northern District of California has subpoena power ... to compel attendance at trial of the former Apple employees that reside in the Northern District of California .... This District lacks subpoena power [ ].").

While HTC has identified numerous third-party witnesses subject to compulsory process in California, Apple has failed to identify *a single witness* in Delaware. This dichotomy alone warrants transfer. *See Genentech*, 566 F.3d at 1345 (finding abuse of discretion in denying transfer where, *inter alia*, a "substantial number of material witnesses" resided within the transferee venue and no witnesses resided in the district where it was filed).

### 3. The Northern District of California is far more convenient for all parties.

Apple does not and cannot dispute that the Northern District of California is a more convenient forum for Apple and its employee-witnesses based in Cupertino, California.[6] *See Nilssen*, 2001 WL 34368395 at * 2 (noting that convenience of plaintiff favored transfer to the location of its principal place of business and employees). Nor can Apple—even with the benefit of discovery—dispute that transferring this case will be more convenient for HTC and its employee-witnesses, who are located in San Francisco, Taiwan, and Washington state. *See* HTC Opening Brief at 12-13. As Apple has itself argued in seeking transfer to the Northern District of California, "[i]t goes without saying that additional distance from home means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Ex. 1 at 9 (citation omitted); *see also Mekiki*, 2010 U.S. Dist. LEXIS 55638 at *11 ("[C]onsidering the physical distance of both parties to Delaware, it is clear that litigating this matter in the Northern District of California would be significantly more convenient and less burdensome ....)[7]

### 4. The remaining private interest factors also heavily favor transfer.

Apple does not contest that most of HTC's documents are located in Taiwan or on the West Coast, nor can it show that a single document is in Delaware. Notwithstanding Apple's

---

[6] *See also* Ex. 1 at 3 ("Apple's Cupertino headquarters are located approximately ten miles from the Northern District of California's San Jose courthouse, forty-five miles from the San Francisco courthouse, and forty-eight miles from the Oakland courthouse.").

[7] Contrary to Apple's arguments, HTC's filing of a complaint at the ITC has no bearing on the convenience analysis because the ITC is a single-venue forum. Apple is also wrong to claim that the Court should consider HTC's involvement in other unrelated litigation on the East Coast. *See id.* at *11, n.1 (noting that prior unrelated litigation is irrelevant to a motion to transfer).

argument that it can produce the documents in this District, their location still favors transfer where trial here will impose a "significant and unnecessary burden [ ] to transport documents that would not be incurred if the case were to proceed in the Northern District of California." *See Genentech*, 566 F.3d at 1346 (finding that costs of transporting documents favored transfer).

In addition, according even to Apple's own prior representations as set forth above, sales of an accused product are at best a dubious connection to Delaware because the same can be said of any district. The Northern District of California—Apple's "home turf," where all 20 of the asserted inventions were conceived and reduced to practice, where the bulk of named inventors continue to reside, and where the Google team collaborated with HTC to develop the accused technology—is undoubtedly the District where Apple's claims arose. As such, this factor too favors transfer.

**B.     The Interests of Justice Strongly Support Transfer.**

    **1.     Apple's belated and tactical consolidation motion does not justify denying transfer.**

Apple seeks to rewrite history by claiming that it filed suit in Delaware because it recognized the efficiencies of suing Nokia and HTC in the same place. *See* Opp. at 10, 13. A party's self-serving attempt to manipulate venue cannot defeat a venue transfer motion. *See Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964) ("The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law *and not from the deliberate conduct of a party favoring trial in an inconvenient forum*.") (emphasis added).

The record here reveals that Apple seeks consolidation to avoid venue transfer and not, as it claims, to take advantage of efficiency. Apple failed to indicate the existence of any related cases pending in this District when it filed its complaints in the instant matters—despite Apple's having already asserted its patent-infringement counterclaims against Nokia. On multiple occasions thereafter, Apple could have moved to consolidate but failed to do so. Instead, Apple submitted only a letter to Chief Judge Sleet explaining that it had "come to [its] attention" that the cases "involve *some* of the same technology" and that they should merely be "identified" as related. *See* Letter of March 24, 2010 (D.I. 5) (emphasis added). Apple offers no evidence that at the April, 2010 case management conference in Apple's un-stayed case against Nokia, Apple

sought or even mentioned the issue of consolidation.

Apple's argument that similar or related matters should be maintained in a single district for the sake of efficiency is inapposite. For example, Apple relies on *Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29, 34 (N.D. Ill 1980), which considered separate lawsuits concerning a *single patent*. But *Magnavox* is turned on its head when considered in the present context, where consolidation would require a *single judge to consider 44 patents* and allegations of infringement by distinctly different operating systems. Similarly inapt is Apple's reliance on *In re Volkswagen*, 566 F.3d 1349 (Fed. Cir. 2009), which noted that multiple pending cases might bear on the transfer analysis where they involve "precisely the same issues." *Id.* at 1351 (internal quotation omitted). Not so here. The central issue—whether the accused products infringe Apple's patents—is different in the HTC and Nokia cases because Apple's infringement arguments must be tailored to the specific products at issue. Moreover, *Volkswagen* recognizes that maintaining multiple suits in a single forum may be appropriate only where "other relevant factors are in equipoise." *Id.* (quoting *Regents v. Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)).[8]

HTC's position on consolidation before the ITC is irrelevant to the transfer analysis. The ITC is a single-venue forum that presents no opportunity for transfer. Moreover, the ITC can compel live witnesses residing anywhere in the United States to attend the hearing. 9 U.S.C. § 1333(b). Unlike the ITC, this Court should pay heed to its geographically-limited subpoena power, which mandates transfer under the present circumstances.

To the extent the Court wishes to consider HTC's position on consolidation at the ITC, it should also consider Apple's arguments opposing consolidation. Specifically, Apple argued:

- Consolidation will "radically complicate and delay" these proceedings. Ex. 5 at 1.

---

[8] In a case virtually identical to the present situation, a court distinguished *Volkswagen* and denied transfer to a district where other lawsuits involving the same patents were pending, holding that the proper venue was "closer to the hub of activity pertinent to this case and key witnesses." *Google, Inc. v. Traffic Info., LLC*, C.A. No. 09-642-HU, 2010 WL 743878 at *6 (D. Or. Feb. 2, 2010) ("[T]he preferred forum is that which is the center of gravity of the accused activity.") (internal quotation and citation omitted), *adopted by*, 2010 WL 1039791 (D. Or. Mar 19, 2010).

- "Infringement [as to Nokia versus HTC accused devices] is a fact-intensive analysis." *Id.* at 2.
- There are "important differences in the patents asserted in the respective cases" against Nokia and HTC. *Id.* at 7.
- "The accused HTC products are based on the Android software platform, introducing the complication of the Android Platform, developed by Google." *Id.* at 15.

These considerations are even more applicable to the present cases, where Apple seeks to have a single judge decide infringement claims involving 44 patents.[9]

As will be set forth more fully in HTC's opposition to the motion for consolidation, the assignment of four patent-infringement cases to a single judge in this District makes no practical sense given the magnitude and breadth of issues that each case involves. There are more unique issues than overlapping in Apple's respective disputes against HTC and Nokia. Apple asserts *nine patents against HTC only*—no small number. *See* Declaration of Richard Herrmann in Support of Opp. (D.I. 23); Ex. 2. As to Apple's un-stayed case against HTC, just three of ten patents overlap with any at issue in the un-stayed Nokia case, which may soon be reduced to two given HTC's pending motion to dismiss. *See id.*; HTC Mot. to Dismiss (D.I. 26) . While Apple claims similarity among the four cases based on the fact that there are 13 named inventors in common as to the overlapping patents, HTC has identified a total of 69 named inventors of the patents asserted against HTC, leaving 56 inventors unique to the Apple and HTC disputes. *See* Opp. at 6; HTC Opening Brief at 3. Furthermore, the patents alone do not give a full picture of the scope of these disputes—Apple is correct in its contention that infringement is a fact-intensive analysis, and Apple says nothing about how the accused technologies are similar.

In sum, given Apple's transparent effort to manufacture venue via its belated and misguided motion to consolidate, this mere contingency does not favor a Delaware forum.

**2. Case congestion and judicial efficiency favor transfer.**

Apple does not and cannot dispute that case congestion favors Northern California, particularly given the backlog of cases caused by Delaware's vacancies in judgeships and the

---

[9] The Commission accepted the Investigative Staff's recommendation to consolidate *only* the 5 overlapping patents. *See* Ex. 8 (April 26, 2010 ITC Order); Ex. 9 (April 13, 2010 Staff Brief) at 5 n.3 (noting that complete consolidation would require an "exceptionally long" proceeding).

resulting assignment of these cases to a Judge from another district. Thus, practical considerations, including judicial efficiency, strongly favor transfer.

### 3. The Northern District of California has a strong local interest in adjudicating Apple's claims against HTC.

As Apple itself argued in seeking transfer of a different case to the Northern District of California, Delaware "has no connection to the dispute underlying this action aside from the fact that the [accused products] are available for purchase here—just as they are in every other judicial district in the country." Ex. 1 at 1; *id.* at 6 ("As in *TS Tech*, the only potential link between the dispute underlying this action and the Eastern District is that some of the accused products are sold in this District.") (citing *In re TS Tech USA Corp*, 551 F.3d at 1321).

By contrast, the Northern District of California has a strong local interest in resolving this dispute because it is home to Apple's headquarters, the conception and development of all 20 asserted patents, the vast majority of the named inventors of these patents, and key third-party witnesses from Google who developed much of the accused technology.[10] Along these same lines, and particularly given the magnitude of these two cases, the burden of resolving an onerous legal dispute should not be "imposed upon the people of a community which has no relation to the litigation." *Ferens v. John Deere Co.*, 494 U.S. 516, 529-30 (1990).

### III. CONCLUSION

These cases do not belong in Delaware. The Northern District of California is home to Apple; the development of the alleged inventions and their named inventors; the bulk of third-party witnesses; and many documents relevant to development of the accused products' allegedly infringing features. The Court should thus grant the motion to transfer.

---

[10] Apple provides no support for its puzzling contention that third-party Google's incorporation in Delaware gives rise to a Delaware interest. Rather, it is the location of *parties* or *operative events* that give rise to a local interest. *See e.g., Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 132-33 (D. Del. 1999) (granting motion to transfer given local interest in resolving controversy where many events underlying the action occurred).

June 9, 2010

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

John W. Shaw (#3362) *[jshaw@ycst.com]*
Karen L. Pascale (#2903) *[kpascale@ycst.com]*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600

Robert A. Van Nest
Leo L. Lam
Ashok Ramani
Eugene M. Paige
Ajay S. Krishnan
John Bostic
**KEKER & VAN NEST LLP**
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400

*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc.*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on June 18, 2010, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following counsel of record:

> Richard K. Herrmann [rherrmann@morrisjames.com]
> Mary B. Matterer [mmatterer@morrisjames.com]
> MORRIS JAMES LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, Delaware 19801

I further certify that on June 18, 2010, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

### *By E-Mail*

> Robert G. Krupka [bob.krupka@kirkland.com]
> KIRKLAND & ELLIS LLP
> 333 Hope Street
> Los Angeles, CA 90071

> Gregory S. Arovas [greg.arovas@kirkland.com]
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022

> Bryan S. Hales [bryan.hales@kirkland.com]
> Marcus E. Sernel [marc.sernel@kirkland.com]
> James A. Shimota [jshimota@kirkland.com]
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654

> Kenneth H. Bridges [kbridges@WongCabello.com]
> Michael T. Pieja [mpieja@WongCabello.com]
> Brian C. Kwok [bkwok@WongCabello.com]
> WONG, CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI LLP
> 540 Cowper Street, Suite 100
> Palo Alto, CA 94301

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

---

John W. Shaw (#3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp.; HTC (B.V.I.) Corp.; HTC America, Inc.; and Exedea, Inc.*